UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 23-310(1) (DWF/DJF) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| Mario Lazaro Santos-Hunter, | |
| Defendant. | |

**INTRODUCTION**

Defendant Mario Lazaro Santos-Hunter moves to suppress evidence (Doc. No. 20) and statements (Doc. No. 21). In a Report and Recommendation ("R&R"), Magistrate Judge Dulce J. Foster recommended denying both motions.[1] (Doc. No. 68.) Santos-Hunter filed an objection to the R&R. (Doc. No. 71.) After an independent review of the record and objection, the Court adopts the Magistrate Judge's R&R.

**DISCUSSION**

The Court has conducted a *de novo* review of the record, including a review of the arguments and submissions of counsel, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b). The relevant factual and procedural background for the above-entitled matter is clearly and precisely set forth in the Magistrate Judge's R&R and is incorporated by reference.

---

[1] The Magistrate Judge further ordered a *Franks* hearing regarding Santos-Hunter's supplemental motion to suppress evidence (Doc. No. 33). That motion is not the subject of this order.

In the R&R, the Magistrate Judge concluded that the April 12 Affidavit established probable cause that Santos-Hunter was involved in criminal activity because of the following: (1) Facebook messages linked Santos-Hunter to Mr. Bankhead, a known drug trafficker; (2) the messages referenced a "trade" and included "an instruction not to discuss that 'trade' on Facebook"; (3) Santos-Hunters showed his agreement to the instruction by stating that he "ain't say to[o] much"; (4) a confidential informant identified Santos-Hunter as being involved in drug trafficking; and (5) the informant "directed law enforcement officers to [Santos-Hunter's] Facebook page, where they observed photographs of Mr. Santos-Hunter posing with large amounts of U.S. currency." (Doc. No. 68 at 18.)

The Magistrate Judge further concluded that the Affidavit established a nexus between the criminal activity and the phone number because Investigator Amberg stated in the Affidavit that, in his training and experience, drug dealers "use cellular phones to facilitate the possession and sale of controlled substances" and tracking the phone number would help law enforcement with "identifying other co-conspirators, unidentified narcotic stash houses, and narcotic transactions with other customers around the Twin Cities metro and beyond." (*Id.* at 19.) Even if the Affidavit was insufficient, the Magistrate Judge concluded that the good faith exception applied, as the officers acted in good faith and the Affidavit "established a substantial basis for a finding of probable cause." (*Id.* at 21.)

The Magistrate Judge also concluded that Santos-Hunter was not entitled to a *Franks* hearing because "[e]ven if the Court were to supplement the April Affidavit with

2

the fact that Mr. Bankhead's phone did not contain text messages or calls to the target phone number, the April Affidavit would establish probable cause." (*Id.* at 22.) Thus, the Magistrate Judge recommended denying Santos-Hunter's motion to suppress evidence.

In addition, the Magistrate Judge determined that Santos-Hunter's *Miranda* rights were not violated. Investigator Amberg's questions prior to the *Miranda* warning were merely biographical and none of the questions were likely to illicit an incriminating response regarding the alleged offenses (possession of firearms, including machineguns, and possession of fentanyl with intent to distribute). Moreover, the Magistrate Judge reasoned that the Investigator's questions after Santos-Hunter requested an attorney did not violate Santos-Hunter's *Miranda* rights because the questions were made in response to Santos-Hunter's spontaneous statements.

Santos-Hunter objects to each of the Magistrate Judge's above conclusions. First, Santos-Hunter argues that the Affidavit did not establish probable cause that he was engaged in criminal activity because the Facebook messages merely established his association with a known criminal, which is not enough to establish probable cause. The Eighth Circuit has held that "mere association with a known or suspected criminal," such as a person's mere presence in the suspect's car or the presence of a person in a high-crime area, does not create probable cause to arrest. *United States v. Everroad*, 704 F.2d 403, 406 (8th Cir. 1983). The Affidavit here establishes more than mere association. Santos-Hunter referenced making a "trade" with a known drug trafficker, who then told him to not discuss the "trade" on Facebook. While Santos-Hunter argues that the "trade"

3

they were referring to could have been about "exchanging something that Bankhead was embarrassed about or wanted to keep private" (Doc. No. 71 at 8), "[p]robable cause does not require absolute certainty." *United States v. Muhammad*, 604 F.3d 1022, 1028 (8th Cir. 2010). The Court agrees with the Magistrate Judge that the Facebook messages and the confidential informant's tip were sufficient to establish probable cause that Santos-Hunter was engaged in criminal activity.

Santos-Hunter next challenges the Magistrate Judge's conclusion that the Affidavit established a nexus between the criminal activity and the phone number. Santos-Hunter argues that the "simple assertion that 'drug dealers will use cellular phones' is not enough to establish a fair probability that contraband or evidence of a crime would be found in the information sought from T-Mobile for the phone number at issue here." (Doc. No. 71 at 11.) Here, the search warrant requested authorization for the installation and use of an electronic tracking device on a phone number known to be used by Santos-Hunter, as well as a pen register and trap and trace device. Officers had probable cause to believe that Santos-Hunter was involved in drug trafficking and Santos-Hunter's probation officer advised the officers that Santo-Hunter was using the target phone number. This information gives rise to the inference that Santos-Hunter may carry his phone with him while he engaged in the suspected criminal activity. *See United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) ("[A]n issuing judge may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant.") (internal quotation and citation omitted).

4

Moreover, the Affidavit provided that in Investigator Amberg's training and experience, drug dealers often use cell phones "to facilitate the possession and sale of controlled substances" and tracking the phone number would help the officers with "identifying other co-conspirators, unidentified narcotic stash houses, and narcotic transactions with other customers around the Twin Cities metro and beyond." (Doc. No. 68 at 19.)

The Court concludes that the Affidavit established a nexus between the phone and the criminal activity. But even if the Affidavit failed to do so, the *Leon* good faith exception would apply as the search warrant was not "so facially deficient that no police officer would reasonably presume the warrant to be valid." *United States v. Thompson*, 976 F.3d 815, 822 (8th Cir. 2020) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)).

Santos-Hunter further argues that law enforcement deliberately or recklessly omitted from the Affidavit that Investigator Amberg "was not aware of any evidence on Bankhead's phone—either text messages or phone calls—suggesting the target phone number was being used to communicate about drug transactions." (Doc. No. 71 at 12.) Santos-Hunter's argument is the same argument he presented to the Magistrate Judge. The Magistrate Judge thoroughly considered this argument in the R&R and rejected it. The Court agrees with the Magistrate Judge that even if this information was included in the Affidavit, the Affidavit would still establish probable cause. The Court therefore denies Santos-Hunter's motion to suppress evidence.

5

Next, Santos-Hunter argues that statements he made prior to being given his *Miranda* rights should be suppressed. Prior to providing Santos-Hunter with his *Miranda* rights, Investigator Amberg asked Santos-Hunter his name, age, the address he was staying at, his marital status, whether he was employed and his employer's address, his phone number, and the last grade he completed. "[A] request for routine information necessary for basic identification purposes is not interrogation under *Miranda*, even if the information turns out to be incriminating." *United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir. 1985). Such questioning is only impermissible "if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged." *Id.* at 391-92.

Here, Santos-Hunter has not demonstrated how the information was directly relevant to the substantive charges, and these routine background questions were not reasonably likely to elicit an incriminating response. *See United States v. Armstrong*, No. 19-cr-31, 2020 WL 1853601, at *2 (D.N.D. Apr. 13, 2020) ("[A] request by law enforcement for a suspect's address, telephone number, marital status, place of employment, and home address are basic identification information and *Miranda* warnings are not required."). And while Santos-Hunter argues that these questions were not necessary for booking purposes because Santos-Hunter had already been booked, courts in this circuit have held that the routine-information exception still applies. *United States v. Bear*, No. 21-cr-30074, 2022 WL 7956487, at *2 (S.D. Aug. 18, 2022) (concluding that the "exception applies even though [the defendant] had been arrested

6

and was in custody"); *United States v. Temple*, 15-cr-230, 2017 WL 7798109, at *23 (E.D. Mo. Oct. 6, 2017) ("Although these questions occurred after formal booking, [the officer] testified that such questions were part of his normal procedure to get basic pedigree and similar information from persons he questions.").

Lastly, Santos-Hunter argues that statements he made after he invoked his right to counsel should be suppressed. Investigator Amberg asked Santos-Hunter if he had ever done a DNA sample before. The Court agrees with the Magistrate Judge that this question was "incident to collecting the sample" and not "designed to obtain incriminating information." (Doc. No. 68 at 32.) Additionally, Santos-Hunter spontaneously asked Investigator Amberg what was happening with "Shaunice's" phone "and explained that the owner of the phone wanted it back." (*Id.* at 32.) Investigator Amberg asked a clarifying question ("Whose phone is it?"). (*Id.*). Santos-Hunter said it was Ms. Dodd's phone. Investigator Amberg then asked if he had "chatted with her." (*Id.*) Santos-Hunter said that someone else had told him Dodd was asking about her keys and phone. (*Id.* at 10.) "An officer's request for clarification of a spontaneous statement generally does not constitute interrogation." *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005). But "[a] question would constitute interrogation if it attempted to enhance [the defendant's] guilt." *Id.* (internal quotations and citation omitted). The Court cannot conclude that either of Investigator Amberg's questions were meant to enhance Santos-Hunter's guilt. Rather, the Court agrees with the Magistrate Judge that the questions were in direct response to Santos-Hunter's concern that the phone be

7

returned to its owner.  The Court therefore denies Santos-Hunter's motion to suppress statements.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Santos-Hunter's objection (Doc. No. [71]) to Magistrate Judge Dulce J. Foster's March 6, 2024 Report and Recommendation is **OVERRULED**.

2. Magistrate Judge Dulce J. Foster's March 6, 2024 Report and Recommendation (Doc. No. [68]) is **ADOPTED**.

3. Santos-Hunter's motion to suppress evidence (Doc. No. [20]) is **DENIED**.

4. Santos-Hunter's motion to suppress statements (Doc. No. [21]) is **DENIED.**

Dated:  May 2, 2024                                    s/Donovan W. Frank
                                                                  DONOVAN W. FRANK
                                                                  United States District Judge